R. J. SAUNDERS & CO., INC. *v.* UNITED STATES  (No. 5242)*

United States Court of Customs and Patent Appeals, March 9, 1967

*Eugene F. Blauvelt* (*Edward F. Jordan,* of counsel) for appellant.
*Barefoot Sanders,* Assistant Attorney General, *Andrew P. Vance,* Chief Customs Section, *Mollie Strum, Sheila N. Ziff* for the United States.

[Oral argument February 7, 1967 by Mr. Blauvelt and Mrs. Ziff]

Before RICH, Acting Chief Judge, SMITH, ALMOND, Associate Judges, and WILLIAM H. KIRKPATRICK**

RICH, Acting Chief Judge, delivered the opinion of the court:

This appeal is from the judgment of the United States Customs Court, First Division (C.D. 2615), overruling an importer's protest to the classification of merchandise invoiced as "Cellulose sponge cloth." The material is imported in rolls 100 meters long in various widths, 23, 30½, and 92 centimeters, in thicknesses of 4, 5, and 6 millimeters. Colors are pink, yellow, and blue. The nominal plaintiff is a customs broker acting for the importer, Products from Sweden,

*C.A.D. 904.
**Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

Inc., which sells all it imports to the American Sponge and Chamois Co., Inc. This company cuts the two narrower widths into pieces to make wiping cloths for such purposes as dishcloths, general cleaning cloths, cloths for wiping cows' udders, baby's washcloths, and cloths for drying automobiles. The wider roll is sold as imported to a manufacturer of transistors who uses it, by cutting it into appropriately sized pieces, to make lintless wiping cloths for his machinery. When the two narrower widths are cut, they are processed in four chemical baths to maintain them in a soft condition pending sale, give them the proper pH, and to inhibit mold. They are packaged for retail sale in plastic envelopes and sold as "AMSCO Sponge Cloth."

█ The merchandise was classified under paragraph 31(b)(2) of the Tariff Act of 1930 as modified by T.D. 54108:

All compounds of cellulose * * *
    Made into finished or partly finished articles * * *
        Sponges_____ 38% ad val.

The importer claims classification under paragraph 31(b)(1) of the Tariff Act of 1930 as modified by T.D. 52739, as supplemented by T.D. 52763:

All compounds of cellulose * * *
    In blocks, *sheets*, rods, tubes, powder, flakes, briquets, or other forms, whether or not colloided, *not made into finished or partly finished articles:* [our emphasis]

    *      *      *      *      *      *      *
    Other_____ 20¢ per lb.

The same statutory provisions were involved in the case of *United States (American Sponge & Chamois Co., Party in Interest)* v. *Nylonge Corp.*, 48 CCPA 55, C.A.D. 764, (hereinafter *Nylonge* case), upon which the lower court relied. The merchandise there was not sponge cloth but the same general kind of cellulose material in the form of blocks or loaves 2½″ to 3¾″ thick, 4″ to 5¼″ wide, and 32″ long, which, after importation, were given the same chemical treatments as the sponge cloth here and cut into blocks packaged in bags for sale as sponges. We held the imports were partly finished sponges, affirming the judgment of the Customs Court holding that the proper classification was paragraph 31(b)(2). The party in interest in that case was urging, as does appellant here, that the imports were not partly finished articles, namely, sponges.

It appears to us that the imported sponge cloth is even more nearly a finished article than were the imports in the *Nylonge* case. In fact, the rolls of widest material were all sold to the ultimate user in their imported condition. He cut them up as he wished. Nothing needs to be done to complete the imported material for final use except to cut it from the roll.

Appellant seeks to distinguish from the *Nylonge* case because we said in our opinion there that "the importations were obviously formed in the rectangular and oval shapes having specified dimensions for a definite reason," and also said those shapes had been "sufficiently advanced toward the completion of the finished product to be considered dedicated to their ultimate use." Appellant says those statements do not apply to the merchandise here. We cannot agree. No other distinction is attempted.

Appellant's brief relies on the following much earlier cases involving different provisions of the law and different materials, for which reasons we find them less in point than the *Nylonge* case: *United States* v. *Harding Co.*, 21 CCPA 307, T.D. 46830, involving woven asbestos and wire classified as yarn and claimed as unfinished brake linings constituting parts of automobiles, finished or unfinished; *Harding Co.* v. *United States*, 23 CCPA 250, T.D. 48109, involving the same merchandise; *American Import Co.* v. *United States*, 26 CCPA 72, T.D. 49612, involving 6-foot lengths of artificial gut made of silk classified as manufacturers of silk and claimed as leaders or casts, finished or unfinished, or as fishing tackle and parts thereof, finished or unfinished; and *United States* v. *Guggenheim Bros. Dental Supply Co.*, 22 CCPA 613, T.D. 47604, involving rectangular pieces of cellulose material known as "Dental Chiron Gum Blanks" used for making artificial dentures, classified as partly finished articles of cellulose but held to be sheets not made into partly finished articles.

At oral argument counsel for appellant referred to two additional cases not in appellant's brief: *Rogers* v. *United States*, 14 Ct. Cust. Appls. 51, T.D. 41552, involving woven wool upholstery fabrics with large woven figures classified as wool fabrics and claimed under a manufactures of wool paragraph because suited to be cut into backs and seats of chairs, sofas and davenports, held to be properly classified; and *Nyman* v. *United States*, 14 Ct. Cust. Appls. 432, T.D. 42060, involving strips of steel, perforated, polished, and tempered from which safety razor blades were made in this country, classified as unfinished blades and claimed as strips of steel, held to be the former.

Appellant does not so much rely on the decisions in those cases as certain statements made in the opinions supporting the decisions. We think the words of opinions must be read in relation to the subject matter under discussion. Observations going beyond the necessities of decisions are not of authoritative effect.

The Customs Court regarded the *Nylonge* case as the most pertinent and so do we.

The judgment below is *affirmed*.

KIRKPATRICK, J., took no part in the decision of this case.